IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BRENDA LERMA, INDIVIDUALLY, AS NEXT FRIEND OF J.L. AND D.L., AND AS REPRESENTATIVE OF THE ESTATE OF LUIS LERMA; FOR AND ON BEHALF OF ALL THOSE ENTITLED TO RECOVER FOR HIS DEATH UNDER THE TEXAS WRONGFUL DEATH AND SURVIVAL ACTS; LUIS ORALDO LERMA MIRELES and NINFA CANTU GARCIA DE LERMA<br>    Plaintiffs<br><br>V.<br><br>BRIGGS & STRATTON CORPORATION, and BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC<br><br>    Defendants | § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B12229<br><br><br>JURY DEMANDED |

## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Brenda Lerma, individually; and as Next Friend of J.L. and D.L.,

minor children; and as Representative of the Estate of Luis Lerma, for and on

behalf of all those entitled to recover for the death of Luis Lerma under the Texas

Wrongful Death and Survival Acts, and Luis Oraldo Lerma Mireles and Ninfa

Cantu Garcia de Lerma, file this First Amended Original Complaint, naming Briggs

& Stratton Corporation and Briggs & Stratton Power Products Group, LLC

EXHIBIT "A"

(collectively referred to herein as "Briggs & Stratton" unless otherwise noted) as Defendants herein, and for their cause of action would show the Court as follows:

# I.
## JURISDICTION AND VENUE

1.1    The court has jurisdiction over this cause of action because it is a cause of action between citizens of Texas and Wisconsin. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(2).

1.2    Venue is proper in the Southern District of Texas because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)(2). Specifically, the defective generator caused the death of Luis Lerma around Arroyo City, Texas, which is located in the Southern District of Texas, Brownsville Division.

1.3    Briggs & Stratton's contacts with the State of Texas are continuous and systematic, such that the court has general personal jurisdiction over Briggs & Stratton.

1.4    Generators manufactured by Defendant Briggs & Stratton are routinely sold in Texas through local and national dealers in the Southern District of Texas and who routinely do business in the Southern District of Texas.

1.5    Defendant Briggs & Stratton purposefully markets and sells generators through distributors in the Southern District of Texas. Defendants Briggs & Stratton Generator is purposefully operating a substantial part of its business in Texas. Defendants have purposefully availed themselves of the

privileges and benefits of conducting business in Texas. The Court's exercise of personal jurisdiction over Briggs & Stratton comports with due process.

1.6     Briggs & Stratton is deemed to reside in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (a)(1)(c) in that they regularly conduct business in the Southern District of Texas, and are subject to personal jurisdiction in this District. Moreover, upon information and belief, Plaintiffs believe that Briggs & Stratton has previously appeared in and defended one or more lawsuits in Texas.

## II.
## PARTIES

2.1     Plaintiffs are Luis Lerma's surviving wife, Brenda Lerma, and his surviving minor children J.L. and D.L., who bring suit by and through their Next Friend Brenda Lerma. Plaintiff Brenda Lerma brings suit herein Individually and as Next Friend of J.L. and D.L., minor children under the Texas Wrongful Death Act. Plaintiff Brenda Lerma also brings suit as the Representative of the Estate of Luis Lerma under the Texas Survival Act. All Plaintiffs reside in Brownsville, Texas. D.L. and J.L. are United States citizens residing in Brownsville, Texas.

2.2     Plaintiffs Luis Oraldo Lerma Mireles and Ninfa Cantu Garcia de Lerma are residents of Mexico. They are the natural and biological parents of Luis Lerma, deceased. They each bring suit individually.

2.3     Defendant Briggs & Stratton Corporation is a Wisconsin corporation authorized to conduct business in Texas and that conducts business in Texas. At all times pertinent to this Complaint, Defendant Briggs & Stratton Corporation was and is in the business of designing, manufacturing, marketing, promoting,

advertising, and selling generators. Defendant Briggs & Stratton Corporation transacts business in Texas alone and/or by and through its subsidiaries, and derives substantial revenues from business in the State of Texas. Defendant Briggs & Stratton Corporation was properly served and has filed an answer in this lawsuit.

2.4    Defendant Briggs & Stratton Power Products Group, LLC is a Wisconsin corporation authorized to conduct business in Texas and that conducts business in Texas. At all times pertinent to this Complaint, Defendant Briggs & Stratton Power Products Group, LLC was and is in the business of designing, manufacturing, marketing, promoting, advertising, and selling generators. Defendant Briggs & Stratton Power Products Group, LLC transacts business in Texas alone and/or by and through its subsidiaries, and derives substantial revenues from business in the State of Texas. Defendant Briggs & Stratton Power Products Group, LLC was properly served and filed an answer to this lawsuit.

2.5    The Defendants named above are collectively referred to herein as "Briggs & Stratton." Upon information and belief, both Briggs and Stratton defendants were involved in the design, manufacture, and marketing of the subject defective generator.

### III.
### FACTS

3.1    On or about May 21, 2011, Luis Lerma Cantu ("Lerma") was working with other employees of a contractor completing a deck floor on a house on the Texas coast outside Arroyo City, Texas. Lerma was hired to build the subfloor a house that was on the water on the bay. As Lerma was working on the house, a drill

that was plugged into a portable 5500 Watt Briggs & Stratton generator (model number 030424) (serial number 1016151371) fell into the water. Because the generator lacked a ground-fault circuit interrupter system, which would prevent electrocution, Lerma was electrocuted. Lerma eventually died from the electrocution after experiencing tremendous conscious pain and suffering. Lerma was 26 years old at the time of his death.

3.2     The Briggs & Stratton generator lacked a ground-fault circuit interrupter ("GFCI"), which is a life-saving device which rendered the generator defective by design and unreasonably dangerous. GFCI was invented around 1961. For over half a century, GFCI has been an inexpensive device that has played a key role in reducing and eliminating electrocutions, including electrocutions from portable generators.

3.3     A ground-fault occurs when there is a break in the low-resistance grounding path from a tool or electrical system. The electrical current may then take an alternative path to the ground through the user, resulting in serious injuries or death. The GFCI is a fast-acting circuit breaker designed to shut off electric power in the event of a ground-fault within as little as 1/40 of a second. It works by comparing the amount of current going to and returning from equipment along the circuit conductors. GFCI constantly monitors current flowing through a circuit. And if the current flowing into the circuit differs by a very small amount from the rerunning current, the GFCI interrupts power faster than a blink of an eye to prevent a lethal dose of electricity. GFCIs are designed to operate before

electricity can affect a person's heartbeat. Take, for example, the following hypothetical created by the United States Consumer Product Safety Commission, which demonstrates the effectiveness and lifesaving nature of GFCI:

> A bare wire inside an appliance touches its metal case. The case is then charged with electricity. If you touch the appliance with one hand while another part of your body is touching a grounded metal object, such as a water faucet, you will get shocked. If the appliance is plugged into an outlet protected by a GFCI, the power will be shut off before a fatal shock can occur.

3.4    The GFCI is rated to trip quickly enough to prevent an electrical incident. If it is properly installed in products, such as the generator here, it is a lifesaver in that the person, such as decedent Lerma, will only receive a harmless shock.

3.5    Briggs & Stratton recognize the lifesaving capabilities of GFCI when installed in its generators because it sells generators that have a GFCI component. Furthermore, other substantially similar generators manufactured by other companies in the generator industry were manufactured and designed with GFCI.

## IV.
## STRICT LIABILITY AGAINST BRIGGS & STRATTON FOR DESIGN DEFECT AND MARKETING DEFECTS

4.1    The generator in question was originally designed, manufactured, sold and/or placed into the stream of commerce by Briggs & Stratton.

4.2    At the time of the sale of the generator in question, Defendant Briggs & Stratton was in the business of designing, manufacturing and selling generators such as the generator in question.

4.3     At the time the generator in question was designed, manufactured, sold and/or placed into the stream of commerce by Defendant Briggs & Stratton, the same was defective and unreasonably dangerous in its design and marketing.

4.4     This defective and unreasonably dangerous condition was a producing cause of the accident made the basis of this suit, the injuries to and consequent death of Luis Lerma, and the damages sustained by all Plaintiffs. The subject generator was defective because it lacked a ground fault circuit interrupter system.

4.5     Aside from normal wear and tear, the subject generator was in the same defective condition at the time of the accident as it was when it left the hands of Defendant Briggs & Stratton Generator. The subject generator was expected to and in fact reached the user or consumer without substantial change in the condition in which it was sold.

4.6     Technologically and economically feasible safer alternative designs existed that would have prevented or significantly reduced the risk of injury without substantially impairing the utility of the product. In fact, technologically and economically feasible safer alternative designs were employed by Briggs & Stratton and its competitors at the date the subject generator was manufactured. Furthermore, GFCI has been around for decades and has been known to be a life-saver for decades.

4.7     A safer alternative design existed. The defective generator was a producing cause of the injuries suffered by Lerma, the death of Lerma, and the damages suffered by all Plaintiffs. The safer alternative design – a generator with

GFCI – would have prevented or significantly reduced the risk of Lerma's injury and death without impairing the generator's utility. This safer alternative design was incorporated by Briggs & Stratton in other generators and by its competitors in substantially similar generators.

4.8    The generator also lacked adequate warnings or instructions which rendered the generator unreasonable dangerous. The warnings given would not alert a reasonably prudent person as to the dangers of the product and the content were not comprehensible and did not convey a reasonable indication of the nature and extent of the danger. The generator without GFCI was dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

4.9    Plaintiffs plead that there were no applicable mandatory federal safety standards that applied to the generator made basis of this lawsuit. Applicable safety standards issued by the Federal Government or any other agency or group, if any, were inadequate to protect the public from unreasonable risks of injury or damage and Defendant Briggs & Stratton has withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations set at issue in this action.

## V.
## NEGLIGENCE OF DEFENDANT BRIGGS & STRATTON

5.1     Defendant Briggs & Stratton Generator committed unreasonable acts of omission and commission, which, collectively and severally, constitute negligence. Such negligence was a proximate cause of the accident and injuries to and consequent death of Luis Lerma, and of all of the Plaintiffs' damages.

## VI.
## GROSS NEGLIGENCE OF DEFENDANT BRIGGS & STRATTON

6.1     Defendant Briggs & Stratton committed acts of omission and commission, which, collectively and severally constitute gross negligence and was a producing and proximate cause of the accident and injuries to and consequent death of Luis Lerma, and the damages sustained by the Plaintiffs.

6.2     Briggs & Stratton's acts and omissions, when viewed objectively from the standpoint of this defendant at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others. Furthermore, Briggs & Stratton had actual, subjective, awareness of the risk involved—electrocution—but nevertheless proceeded with conscious indifference to the rights, safety and welfare of Luis Lerma and the consuming public. Briggs & Stratton failed to use even slight care in the design and marketing of the subject generator when considering the likelihood that harm would result to a consumer such as the decedent.

6.3     Pleading more specifically, Briggs & Stratton appreciated the risk of electrocution that comes with its portable generators, had specific and actual

knowledge that such portable generators would be used in situations where electrocution posed a risk. Briggs & Stratton has knowledge of the effectiveness and lifesaving capabilities of GFCI. GFCI is a relatively cheap addition to the design of portable generators. That is, the technological and economical feasibility of GFCI for this generator was a given in that it was available, employed by Briggs & Stratton in its other generators, and employed by its competitors for substantially similar portable generators. Yet, despite such knowledge, Briggs & Stratton proceeded with conscious indifference to such dangers by making the decision not to employ GFCI design with this portable generator.

## VII. DAMAGES

7.1    As a producing, direct and proximate result of the incident, injuries, and damages for which all Defendants are liable, the Plaintiffs seek and are entitled to general, special, economic and noneconomic, wrongful death and survival damages, as applicable to the Plaintiffs, in an amount in excess of the minimum jurisdictional limits of the court, as determined to be just and fair by the jury. Such damages include, but are not necessarily limited to:

      *a.*    *Wrongful Death Damages*

           (1)    pecuniary loss in the past and future;

           (2)    loss of consortium, companionship and society in the past and future;

           (3)    mental anguish in the past and future;

           (4)    loss of inheritance;

(5)    loss of community estate and addition to estate;

(6)    any other damages available for wrongful death under Texas law;

(7)    all other damages allowed by law and equity.

b.    *Survival Damages*

(1)    conscious pain and mental anguish;

(2)    medical expenses;

(3)    funeral and burial expenses;

(4)    any other damages available for a survival action under Texas law; and

(5)    all other damages allowed by law and equity.

7.2    The damages sought are greatly in excess of the minimum jurisdictional limits of the court.

## VIII. PUNITIVE DAMAGES

8.1    As a result of the gross negligence of Defendants Briggs & Stratton, Defendants should have punitive damages assessed against them in such an amount as the jury may find appropriate.

8.2    Such gross negligence was a proximate cause of the accident made the basis of this suit, the injuries to and consequent death of Luis Lerma, and the damages sustained by all Plaintiffs.

8.3    Plaintiffs seek an award of exemplary damages at the time of the trial in an amount determined to be just by the jury.

## IX. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

9.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## X.  JURY DEMAND

10.1   Plaintiffs respectfully request a trial by jury.

## PRAYER

Plaintiffs pray that this cause be set for trial before a jury, and that Plaintiffs recover judgment of and from Defendants for actual and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with prejudgment interest, post-judgment interest, reasonable attorneys' fees, costs of court, and such other and further relief to which they may show themselves to be justly entitled.

Respectfully submitted,

By:    */s/ Stuart R. White*
Stuart R. White
Texas State Bar No. 24075268
Federal ID. No. 1144883
swhite@swbtrial.com
SICO, WHITE, HOELSCHER, HARRIS
& BRAUGH, LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas  78401
Telephone:  361/653-3300
Facsimile: 361/653-3333

**ATTORNEY IN CHARGE FOR PLAINTIFFS**

OF COUNSEL:

Craig M. Sico
Texas State Bar No. 18339850
Federal ID No. 13540
csico@swbtrial.com
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH, LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas  78401
Telephone:  361/653-3300
Facsimile: 361/653-3333


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of March 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

/s/ Stuart R. White
Stuart R. White


Michael G. Terry
Hartline Dacus Barger Dreyer LLP
One Shoreline Plaza
800 N. Shoreline Blvd.
Suite 2000 - North Tower
Corpus Christi, TX  78401